UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
JOHN BURGESS,                                                    :
                                                                 :
                       Plaintiff,                                  :
                                                                 :    **ORDER ON**
     -against-                                                :    **DEFENDANTS' MOTION**
                                                                 :    **TO DISMISS**
WARDEN BARONE, ET AL.,                                           :
                                                                 :    3:23-cv-967 (VDO)
                       Defendants.                                 :
------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

       Plaintiff John Burgess, a *pro se* prisoner[1] housed within the Connecticut Department of Correction ("DOC") under the Interstate Custody Compact ("ICC"), filed this Complaint under 42 U.S.C. § 1983 on November 9, 2022.[2] Compl., ECF No. 1. He is proceeding in this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 for violation of his Eighth Amendment rights due to deliberate indifference with his medical needs against RN Tawana Furtik,

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut DOC website reflects that Mr. Burgess is housed under the ICC at MacDougall-Walker Correctional Institution with a latest admission date of April 21, 2014. The Court assumes that Mr. Burgess is a sentenced inmate sent by New Hampshire Department of Corrections to be housed in Connecticut. *See* Compl. at ¶ 27; https://business.nh.gov/inmate_locator/.

[2] The Complaint in this case was docketed on July 21, 2023. However, a docketing entry states that the Complaint was actually submitted on November 18, 2022. The Complaint and Motion to Proceed *in Forma Pauperis* were both signed on November 9, 2022. ECF Nos. 1 and 2. When considering a case filed by a prisoner, a court considers a complaint to have been filed as of the date the inmate gives the complaint to prison officials to be mailed to the court. *See Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir. 1993) (holding that a *pro se* prisoner complaint is deemed filed as of the date the prisoner gives the complaint to prison officials to be forwarded to the court) (citing *Houston v. Lack,* 487 U.S. 266, 270 (1988)). Thus, the earliest date that Mr. Burgess could have given his complaint to prison officials was November 9, 2022. In the absence of any indication to the contrary, the Court considers November 9, 2022, to be the filing date for this action.

Physician Assistant (PA) McCrystal, and Dr. Lupis in their individual capacities and official capacities.[3] *See* Initial Review Order ("IRO"), ECF No. 10.

Defendants have moved to dismiss Mr. Burgess' claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Mot. to Dismiss, ECF No. 36.[4]

I. **ALLEGATIONS**

Mr. Burgess is a New Hampshire state prisoner who is housed in Connecticut DOC under the ICC. *See* Compl. at ¶ 27.

In this action, Mr. Burgess claims McCrystal, Furtik, and Dr. Lupis have denied him pain medication and medical treatment for his serious medical needs. Compl. at ¶¶ 1, 15, 42-44. Mr. Burgess has allegedly requested medical treatment for daily bleeding and severe pain in his anus and stomach through administrative remedies, but did not receive the necessary treatment. *See id.* at ¶¶ 2-12, 14, 15-18, 21-44.

On October 30, 2018, McCrystal allegedly saw Mr. Burgess and recognized his need for, but failed to provide him with, pain medication. *Id.* at ¶¶ 19-20. McCrystal stated that Mr. Burgess would be sent to UConn Hospital but failed to send him. *Id.* at ¶ 20. Later at a date not specified, Mr. Burgess was again examined by McCrystal, who then put in the paperwork

---

[3] Mr. Burgess' Complaint case caption names MD Lupis, MD McKrystal, and RN Supervisor Tawana, while the allegations in the body of his Complaint reference RN Supervisor Furtik. *See* Compl. at ¶ 30. The Court refers to Defendants Dr. Lupis and McCrystal consistent with the documents in the medical record, and to Nurse Furtik consistent with Mr. Burgess' allegations.

[4] The DOC Defendants have filed the Notice to *Pro S*e Plaintiff as required under Local Rule 12. Notice, ECF No. 37.

for approval of Mr. Burgess' treatment at UConn Hospital. *Id.* at ¶ 27. The referral for additional treatment at UConn Hospital was approved, but the officials at Mr. Burgess' sending state—New Hampshire—failed to respond to the financial approval required for his treatment. *Id.*

Dr. Lupis allegedly failed to provide Mr. Burgess pain and stomach medication until August 2022. *Id.* at ¶ 13. Although Dr. Lupis allegedly indicated that Mr. Burgess was scheduled for surgery and therapy, Mr. Burgess never received his surgery and therapy. *Id.* at ¶ 14.

Mr. Burgess alleges Nurse Furtik has denied him adequate medical care for his daily anal bleeding and severe pain. *Id.* at ¶ 15. On September 1, 2019, Mr. Burgess made an inmate request to Nurse Furtik to complain that he had not been sent to UConn Hospital as promised by McCrystal, but he did not receive a response to this inmate request. *Id.* at ¶ 30. He claims that he informed her of his daily suffering, extreme pain, and bleeding, and he has asked for pain medication and timely medical care but she has refused to provide him with any relief. *Id.* at ¶ 43.

Mr. Burgess attached to his Complaint approximately 142 pages consisting of his medical records and grievances. *See* Compl. at 24-166. The Court's review of the Motion to Dismiss includes consideration of such documents consistent with the standards for a motion to dismiss under Federal Rule 12(b)(6).

## II.    LEGAL STANDARDS

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor."

3

*Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). "To survive dismissal, the pleadings must contain 'enough facts to state a claim to relief that is plausible on its face[.]'" *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a motion to dismiss, the Court must accept the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014). The Court must then determine whether those allegations "plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). The Court is not required to accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d. Cir. 2008) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In considering this motion, the Court "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).

## III. DISCUSSION

Defendants maintain that Mr. Burgess' Eighth Amendment claims against McCrystal and Furtik are barred under the relevant statute of limitations, that Mr. Burgess cannot state a plausible claim of Eighth Amendment violation by any Defendant, and that Defendants are shielded from liability by qualified immunity. Defs.' Mem., ECF 36-1.

Section 1983 of Title 42 provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

The Court first considers whether Mr. Burgess' Eighth Amendment claims against McCrystal and Furtik are barred by the relevant statute of limitations.

A. **Statute of Limitations**

Generally, the statute of limitations is an affirmative defense; however, a district court may dismiss a complaint if the statute of limitations bars the relief the complaint's allegations seek. *See Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where 'the facts supporting the statute of limitation defense are set forth in the papers plaintiff himself submitted.'") (quoting *Leonhard v. United States*, 633 F.2d 599, 600 n.11 (2d Cir. 1980)); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a district court may dismiss a complaint on initial review based on a defense, such as the statute of limitations, that appears on the face of the complaint).

In Connecticut, § 1983 claims are governed by the three-year statute of limitations established by § 52-577 of the General Statutes of Connecticut. *See Lounsbury v. Jeffries*, 25

F.3d 131, 134 (2d Cir. 1994). However, the "accrual date" from which the statute of limitations begins to run is a "question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Federal law states that accrual for a § 1983 claim starts "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks and citations omitted). Put another way, "accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)).

The doctrine of equitable tolling—which is applied in both federal and Connecticut state courts, *see Rashid v. Mukasey*, 533 F.3d 127, 131 (2d Cir. 2008); *Wiele v. Bd. of Assessment App.*, 119 Conn. App. 544, 554 (2010)—"permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." *Chao v. Russell P. LeFrois Builder*, 291 F.3d 219, 223 (2d Cir. 2002) (cleaned up). Tolling provisions for section 1983 actions derive from state law. *See Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) ("Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled. . . .").

Connecticut law permits tolling of the statute of limitations due to a continuous course of conduct or fraudulent concealment of the cause of action by the defendants. *See Macellaio v. Newington Police Dep't*, 145 Conn. App. 426, 429 (2013). In addition, during the COVID-19 pandemic, Connecticut Governor Lamont issued an executive order, Executive Order 7G, suspending Connecticut statutes of limitations for 347 days between March 19, 2020 and March 1, 2021, in response to the COVID-19 pandemic. *See Rutka v. City of Meriden*, No. 22-CV-1394 (SVN), 2024 WL 4349033, at *8 (D. Conn. Sept. 30, 2024) ("Executive Order 7G, in conjunction with an extension in Executive Order 10A, resulted in the tolling of statutes of

limitations in Connecticut from March 19, 2020, to March 1, 2021."); *see also Cornish v. Town of Bloomfield*, No. 23-CV-1553 (KAD), 2024 WL 4692283, at *4 (D. Conn. Nov. 6, 2024).

Mr. Burgess allegedly saw McCrystal on October 30, 2018 and four months later; and the attached medical documents show that Mr. Burgess saw McCrystal about his external hemorrhoids on February 7, 2019, and that McCrystal submitted a request for approval of the additional treatment on that date. Compl. at ¶¶ 19-20, 27, pp. 54-55, 89-90, 128.

Relevant to Furtik, Mr. Burgess alleges that he sent his inmate request to her on September 1, 2019, while the record attached to the complaint shows that Mr. Burgess filed an inmate request dated October 16, 2019, to Nurse Furtik on October 16, 2019. Compl. at ¶ 30, p. 29.

Section 52-577 may have ordinarily barred these claims based on the date of the Complaint's filing date of November 9, 2022. In this Ruling, the Court cannot determine that Mr. Burgess did not have a continuing medical treatment relationship with either McCrystal or Furtik that may have tolled the statute of limitations. Because the extent of Mr. Burgess' treatment relationships with McCrystal and Furtik is not clear, and in light of the tolling provided by Executive Order 7G, the Court will deny the Motion to Dismiss the Eighth Amendment claims against McCrystal and Furtik on the ground of the statute of limitations.

Accordingly, the Court next considers whether Mr. Burgess has failed to state a claim under the Eighth Amendment for damages.

### B. Eighth Amendment Individual Capacity Claims

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)). This is true with respect to supervisory officials as well, as "it is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (A plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under § 1983.).

To state a claim for deliberate indifference to a serious medical need under the Eighth Amendment, a plaintiff must suffer from a deprivation that is "in objective terms, sufficiently serious." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Under this objective standard, the inmate's medical need or condition must be "a serious one." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted). Moreover, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A sufficiently serious medical condition exists when, if left untreated or neglected for a long period of time, it could "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000) (citation omitted). In addition, if the prisoner is receiving ongoing medical care

and there was an "unreasonable delay or interruption in that treatment," the seriousness inquiry focuses on "the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citation omitted).

For purposes of this Ruling, the Court construes the alleged facts most favorably to Mr. Burgess and considers his allegations sufficient to satisfy the objective element of the Eighth Amendment analysis.

<u>Subjective Element</u>

To satisfy the second subjective prong for an Eighth Amendment claim, a prison official or medical staff member must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *See Salahuddin*, 467 F.3d 263, 279-80 (2d Cir. 2006); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *Tangreti*, 983 F.3d at 619 (explaining plaintiff must show that a defendant "personally knew of and disregarded an excessive risk" to the plaintiff's health or safety) (citation omitted). Mere negligent conduct does not constitute deliberate indifference. *See Salahuddin*, 467 F.3d. at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (medical malpractice alone does not amount to deliberate indifference).

1. **McCrystal**

Mr. Burgess claims McCrystal failed to provide him with necessary pain medication and failed to ensure that he received necessary medical treatment. Compl. at ¶¶ 15, 19-20, 27,

9

44. Defendants argue that Mr. Burgess has not alleged facts sufficient to state a plausible Eighth Amendment claim of deliberate indifference against Defendant McCrystal. Defs.' Mem. at 12-13. The Court agrees in part.

With respect to the claim that McCrystal acted with deliberate indifference to Mr. Burgess' need for more timely treatment at UConn Hospital, Mr. Burgess' allegations indicate that his treatment delay resulted from the failure of New Hampshire officials to approve payment for his treatment. See Compl. at ¶ 27, p. 56. No allegations suggest that McCrystal "actually had and failed to exercise the power" to provide Mr. Burgess with more timely medical treatment at UConn Hospital. *See Warwick v. Doe*, No. 20-CV-227 (JAM), 2020 WL 2768804, at *5 (D. Conn. May 27, 2020) (noting dental assistant's failure to provide Plaintiff with a more immediate dental appointment did not constitute deliberate indifference). Accordingly, the Court will dismiss this claim against McCrystal from the instant action.

Considering all allegations to be true, Mr. Burgess has, however, sufficiently alleged that McCrystal acted with deliberate indifference to his serious need for pain medication. The Court will leave Mr. Burgess to his proof on this claim.

Thus, consistent with the foregoing, Defendants' Motion to Dismiss is granted and denied in part as to McCrystal.

### 2. Furtik

Mr. Burgess alleges that he sent an inmate request directed to Nurse Furtik but received no response and that he requested medical care and pain relief from her but she refused to provide him relief. Compl. at ¶¶ 15, 30, 43. Defendants assert that Mr. Burgess has failed to allege facts to support his claim that Nurse Furtik had any involvement in his medical care and

that she acted with deliberate indifference in violation of the Eighth Amendment. Defs.' Mem. at 13-14.

For his Eighth Amendment claim seeking damages against Nurse Furtik, Mr. Burgess must allege facts to reflect that she was personally involved in the alleged constitutional violation. *Wright*, 21 F.3d at 501 ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). Thus, for a claim of deliberate indifference, he must allege facts to support his claim that Nurse Furtik personally knew of and disregarded his serious need for medical treatment. *See Tangreti*, 983 F.3d at 619. The Court agrees that Mr. Burgess cannot raise a plausible claim of Eighth Amendment medical indifference based only on Nurse Furtik's alleged failure to respond to his inmate request. *Griffin v. Barroga*, No. 23-CV-1590 (OAW), 2024 WL 2862293, at *7 n. 5 (D. Conn. June 6, 2024); *see also Alvarado v. Westchester Cnty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) (noting "as a matter of law, a defendant's mere 'receipt of a letter or grievance, without personally investigating or acting [thereon], is insufficient to establish personal involvement") (internal citations omitted).

In his opposition brief, Mr. Burgess asserts that Nurse Furtik was "always around more than anyone else," that he repeatedly verbally complained to her about his pain, and that she continually refused to provide him with any pain relief medication or medical treatment "many times[.]" Pl.'s Opp. at 13-14, ECF No. 54. The ordinary rule is that "a complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Clean Coal Techs., Inc. v. Leidos, Inc.*, 377 F. Supp. 3d 303, 321 (S.D.N.Y. 2019) (citation omitted). However, "the mandate to liberally construe *pro se* pleadings" sometimes "makes it appropriate to consider the facts set forth in plaintiff's opposition papers." *Satz v. Org. for Resol. of Agunot Inc.*, No. 23-CV-36

11

(MKV), 2024 WL 1330011, at *8 (S.D.N.Y. Mar. 28, 2024) (quoting *Acheampong v. United States*, 2000 WL 1262908 at *4 (S.D.N.Y. 2000)). Here, Mr. Burgess is a self-represented prisoner and the allegations of his Complaint also suggest that he made requests for medical treatment and pain relief from Furtik beyond his alleged inmate request. *See* Compl. at ¶¶ 15, 30, 43. Thus, the Court accepts as true Mr. Burgess' representations that he repeatedly sought medical assistance from Nurse Furtik for his serious pain and treatment needs but she acted with deliberate indifference by failing to assist him. Accordingly, the Court will deny the Motion to Dismiss as to Nurse Furtik and leave Mr. Burgess to his proof.

### 3. Dr. Lupis

Mr. Burgess alleges that Dr. Lupis acted with indifference by failing to provide him with pain and stomach medication for his "daily pain and bleeding" and his refusal to ensure timely and adequate medical care. *See* Compl. at ¶¶ 13-14, 42. Defendants argue that Mr. Burgess has not alleged facts to support his claim that Dr. Lupis acted with the requisite state of mind for deliberate indifference to his medical needs. Defs.' Mem. at 14-15. They maintain that the present record shows that Mr. Burgess merely disagreed with Dr. Lupis' treatment decisions. *Id.* at 15.

Generally, "mere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703 (internal quotation marks and citation omitted). Likewise, "mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.*; *see also Hathaway*, 37 F.3d at 70 ("We do

12

not sit as a medical board of review. Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or evidenced mere disagreement with considered medical judgment, we will not second guess the doctors.").

Defendants argue that the present record indicates that Dr. Lupis provided Mr. Burgess with medical treatment to address his hemorrhoids and provided medications and orders for bloodwork and a general surgery consultation. See Compl. at pp. 66, 78, 80-81, 97, 114-115. In a medical note dated August 22, 2022, Dr. Lupis wrote:

> I will start anusol suppositories. He is on Colace and drinks water. I will order general surgery consult. He has had the colonoscopy in 2020 and it said there are internal hemorrhoids. The olecranon bursa is treated with ice and Motrin, which he already []h[a]s.

*Id.* at p. 78. This record suggests that Mr. Burgess received treatment to address his alleged medical conditions. But whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case. *Chance*, 143 F.3d at 703. "[A] physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan," as evident when treatment recommendations are not derived from "sound medical judgment," but rather from "ulterior motives." *Id.* at 703–704 (holding that plaintiff stated a claim of deliberate indifference by alleging that defendants recommended extracting his teeth because of monetary incentives).

In his opposition, Mr. Burgess asserts that he had no access to ice and Dr. Lupis failed to provide him with prescription Motrin, leaving him to buy the "high priced-low dosage Motrin from the commissary." Pl.'s Opp. at 8, ECF No. 54. The Court concludes that the factual questions relevant to its assessment of Dr. Lupis' state of mind is appropriate for review

13

of a fuller record on a motion for summary judgment. Thus, Defendants' Motion to Dismiss is denied as to Dr. Lupis.

### C. State Constitutional Claims

Mr. Burgess also references violation of his rights to be free from cruel and unusual punishment under the Connecticut constitution. Compl. at ¶¶ 42-44. Although the Court has permitted Plaintiff to proceed on his Eighth Amendment claims, the Court declines at this juncture to exercise supplemental jurisdiction because such claims raise novel questions of state law. *See* 28 U.S.C. § 1367(c)(1) ("district courts may decline to exercise supplemental jurisdiction over a claim … if—(1) the claim raises a novel or complex issue of State law).

In *Binnette v. Sabo*, 244 Conn. 23 (1998), the Connecticut Supreme Court recognized a private cause of action for monetary damages against municipal police officers for violations of Article First, §§ 7 and 9 of the Connecticut Constitution arising from unreasonable search and seizure and unlawful arrest. *Id.* 41-47. In reaching its decision, the Connecticut Supreme Court relied on *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and "emphasize[d] that [its] decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47. Here, Mr. Burgess' claims present new contexts for a cause of action under the Connecticut Constitution, and because recognizing such a cause of action presents a novel and complex issue of state law, the Court declines to exercise supplemental jurisdiction over the state constitutional claims and dismisses them without prejudice to his right to pursue them in state court. *See Baltas v. Erfe*, No. 19-CV-1820 (MPS), 2021 WL 3887591, at *8 (D. Conn. Aug. 31, 2021) (concluding inmate's claims under Article First, §§ 7, 8, 20 presented new and undeveloped issues under state law that were not appropriate for

federal jurisdiction); *Holley v. Cook*, No. 20-CV-170 (MPS), 2020 WL 6532842, at *3–4 (D. Conn. Nov. 5, 2020) ("Although the Connecticut Supreme Court created a cause of action under Article First, sections 7 and 9 for a *Bivens*-type claim, it has not applied section 9 in the context of a case filed by an inmate in connection with his classification or his conditions of confinement. Therefore, the court declines to exercise supplemental jurisdiction over the claim asserted pursuant to Article First, sections 9 of the Connecticut Constitution."); *Gothberg v. Town of Plainville*, 148 F. Supp. 3d 168, 187–88 (D. Conn. 2015) (declining to exercise supplemental jurisdiction over state constitutional claim under Article First, § 8); *see also Lopez v. Smiley*, 375 F. Supp. 2d 19, 26 (D. Conn. 2005) (refraining from exercising supplemental jurisdiction over novel and undeveloped state constitutional claims under Article I).

### D. Qualified Immunity

Defendants contend that qualified immunity shields them from liability for their conduct in their individual capacities. Defs.' Mem. at 15-19. The Court's consideration of qualified immunity is limited to the surviving claims against Furtik, McCrystal and Dr. Lupis.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and

'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

"In determining whether state actors are entitled to qualified immunity under federal law, [the Court] consider[s] two factors: (1) whether the facts presented make out a violation of a constitutional right; and (2) whether the right at issue was clearly established when it was allegedly violated." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 367 (2d Cir. 2021) (cleaned up). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Id.* (internal quotation marks and citation omitted). "In evaluating these two factors, [the Court] look[s] to the specific context of the case at bar rather than broad general proposition[s]." *Id.* (internal quotation marks and citations omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotations and citations omitted). There is no requirement that precedent be directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Qualified immunity may be successfully asserted on a motion to dismiss the complaint, but the defense "faces a formidable hurdle" at the pleading stage. *Horn v. Stephenson*, 11 F.4th 163, 169-70 (2d Cir. 2021). At this stage, the court draws all reasonable inferences in favor of the plaintiff both from the facts alleged in the complaint that support the plaintiff's claim and those that would defeat the qualified immunity defense. *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015).

The Eighth Amendment clearly proscribes deliberate indifference to the serious medical needs of prisoners whether manifested by denial, delay of, or interference with, medical treatment. *See Estelle v. Gamble*, 429 U.S. 97, 104-105 (2d Cir. 2019) ("[D]eliberate indifference to serious medical needs of prisoners ... is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." (footnotes and citations omitted)).

At this stage in the proceeding, Mr. Burgess has alleged violation of his clearly established right under the Eighth Amendment to adequate medical treatment for his serious medical needs and relief from his severe pain. Likewise, Mr. Burgess has alleged sufficient facts, when taken as true and when all reasonable inferences are drawn in his favor, to withstand a defense of qualified immunity as to his surviving medical indifference claims against Defendants Furtik, McCrystal and Dr. Lupis. Accordingly, the Court denies the Motion to Dismiss on the ground that qualified immunity applies. The Court may, however, determine on review of a motion for summary judgment that Defendants are entitled to qualified immunity.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part the Motion to Dismiss filed by Defendants [ECF No. 36].

The Motion to Dismiss is **GRANTED** as to the Eighth Amendment claim against McCrystal for failure to provide Mr. Burgess with timely treatment at UConn Hospital. It is

otherwise **DENIED** as to his Eighth Amendment claims against Defendants Furtik, McCrystal and Dr. Lupis. [5]

The Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(1) over any claims brought pursuant to the Connecticut Constitution. Such claims are **DISMISSED** without prejudice.

If Mr. Burgess believes in good faith that he can correct the deficiencies of his claims as identified in this Order, he may file a motion to amend with an attached proposed amended complaint. He is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference.

**SO ORDERED.**

Hartford, Connecticut
March 4, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge

---

[5] As Mr. Burgess has stated plausible Eighth Amendment claims against Defendants in their individual capacities, he may also proceed against Defendants on official capacity claims to remedy any ongoing Eighth Amendment violation at issue in this action.